Mrs. Westcott, good morning Yes, good morning, your honor I'm a little shorter than the last guy. And your voice is soft. Yes, I'll try to keep it up. The allergy season has started. Good morning, your honors. My name is Lynn Westcott and I represent Penmont Security, the appellant in this matter. I'd like to reserve five minutes for rebuttal. Before this court, as a matter of de novo review, you should validity reach an application of an effective upon filing rule by the FLEX, which is rule 651. As a matter of statutory construction, rule 651 is an invalid rule because it's overbroad and it tends to go outside the scope of regulations. Your argument is that the rule itself is invalid? Yes. Or that it should not be applied to your client because your client's claims were not as a member of the exchange? Well, actually, that's an excellent point, your honor. It's both. The rule itself is invalid if I could... You The lower court found that the enactment of FLEX rule 651 was based on 78 FB4 of the Exchange Act. However, rule 651 uses the term within the rule called related to the business of the exchange. Section 78 FB4 only concerns members and use of facility. The Securities and Exchange Commission has viewed a number of rules very similar to 651 and has opined that this rule is within the powers afforded to SORs, I think it's the acronym. SORs, in fact, that is directly... Aren't those opinions and conclusions entitled to deferential treatment? No, your honor, and I'll tell you why. The lower court did not recognize the language of 651. It may generally have followed the rules of other exchanges that were cited in the court's opinion. Rule 651 was different because rule 651 was constructed by a for-profit, deneutralized exchange. The other rules were in exchanges that were not for profit, so this issue never came up. There were no shareholders of the other exchange. I'm sorry, but what's the difference? They're all fee-shifting rules. If you sue the exchange and you lose and the bills are over $50,000, you have to pay the attorney fees. They're all the same rules, regardless of how you characterize the exchange or the organization. Actually, there is a big difference because the non-profit exchanges, the SEC actually looked at the rule and approved it officially. The SEC never looked at the FILEX rule because it was an effective upon filing rule, and what effective upon filing is supposed to be used for is to mimic other rules or have a common rule, so the SEC has never ruled upon whether a rule likes it. What are you saying? The rule was invalidly adopted? Yes, because I believe I did. The rule was invalidly adopted because the SEC has never ruled on the use of this rule in a for-profit exchange, and the Weissman case in the Ninth Circuit is the case of Perchett Southgate. But it went through the regular rulemaking procedure and all, right? No, it did not. Well, there were comments and all, and the SEC has never withdrawn it or amended it. Well, in the 75 amendments to the Exchange Act, that part of the amendment required everything to be sent to the SEC, but it didn't require that the SEC approve it, nor does it constitute approval. This is exactly the type of argument that should be exhausted before the SEC. In other words, you never made this complaint to the SEC, and why doesn't the, you know, why didn't you exhaust it? Well, why are you excused from the exhausting your administrative remedy here? Because the enactment of this rule might constitute a statutory violation of the Exchange Act. The Exchange Act requires certain things can be delegated, other things cannot. Well, isn't that a challenge you should make first before the exchange? That they in effect exceeded their authority or something like that? Actually, the SEC itself, in an SEC Release 51252, states that effective upon filing rules are subject to de novo review by the court which is never approved that rule. Well, you know, I had the same concern that Judge Tsushima has. Certainly, you could have presented your challenge from the approval of this rule by the Philadelphia Exchange to the SEC, and the SEC could have said, Penmount, you're absolutely right, this rule was improperly adopted, and of course you wouldn't be But if the SEC had disagreed with you, you can still come to court, which really begs the question, why did you not exhaust before the SEC? There was nothing to prevent you from going there. Because PhilEx was going to sweep Penmount's accounts. Penmount did not go to the SEC. Penmount came into court and asked for an injunction to stop PhilEx from sweeping almost a million dollars from its account. Well, you could have done both, right? You could have continued the administrative process and sought some sort of temporary relief. Actually, during that two-week period of time when all this was going on between Christmas Day and New Year's Day, which was a really fun holiday for me, one case was filed, it got dismissed, which is subject to another appeal, so work, work, work. Two days later, we get this one filed in order to preserve Penmount's rights. But back to your initial question on the shareholder issue. Yeah, if we disagree with you that the rule is invalid and we have to apply the rule, you say it shouldn't be applied to us because we're not proceeding as members of the exchange, we're proceeding as shareholders. And also, I think that the test on that is a functional test, not a status test. But you don't dispute that you're a member of the exchange when you file these claims? So whether you're a member and a shareholder, if you brought a claim that could be brought by a member only, I would agree that we would have a harder argument. But we brought state law claims, typical corporate claims. PhilEx is a for-profit company, and Congress has never delegated to the SEC, and therefore the SEC could not delegate to the PhilEx the control of corporate-type claims that are typically shareholder claims. And to speak also to the administrative process, my understanding is the way that works, if it's appealed to the SEC, it only applies to Penmount. So Penmount's other partner that was out there that filed a lawsuit related to insider trading, he also got a Rule 651 letter. That decision at the SEC wouldn't cover him. So you need to take care of this globally, and I see my time's up. We'll get you back, Ms. Westcott. Thank you very much, Mr. Astenberg. Good morning, Your Honors. May it please the Court, my name is Stephen Astenberg, and I'm here on behalf of appellants. The Court below correctly decided that immunity disposes of this case, but as Judge Tashima pointed out, there is an initial question of even subject matter jurisdiction. Yeah, that's right. Is it jurisdictional? Yes, the exhaustion doctrine is a jurisdictional doctrine. No, it depends. It does depend, but in the cases that apply the exhaustion doctrine to the SRO context, they describe it as a subject matter jurisdiction, and I don't know of any reason that would be incorrect. Was that raised below? Excuse me? Was that raised below? Yes. It was raised below. It was briefed below. It was briefed here, and Judge Brody begins her opinion by, yes, assuming jurisdiction and then going on to immunity, perhaps because she felt that was the more straightforward answer, but I think that there's a straightforward answer under either doctrine, and what I'd like to do is just walk through briefly. I mean, Ms. Westcott raises this validity issue. I don't think it's really briefed. I don't think immunity is briefed in her appellate brief until her reply brief, but I'd like to walk through just the approval of the rule, the process, the administrative process that applies here, and explain why exhaustion and then if we get to what immunity would dispose of this matter. Rule 651, as the Court pointed out and as Westcott agreed, has been approved four different times under Section 19B1 of the Exchange Act by counterpart exchanges. It was then approved by the American stock exchange and then later by the Philadelphia Stock Exchange under 19B3, because as the SEC expressly found, it introduced no novel issues. So the SEC, when it issued an order entering Rule 651, did make a finding that it presented no novel issues and therefore was appropriate. I wonder about Ms. Westcott's point that, well, this is the first time it's been applied to a, I guess, a profit-making corporation as opposed to a member corporation. I think that that's correct, and I don't know of any difference that should make, Judge Tsushima. What Ms. Westcott was saying is her issue, the issue that they talk about in their brief, is that a member bringing a shareholder suit should not be subject to that rule. While that's clearly a legislative and adjudicative issue that should have gone up through the administrative process, my point would be member-owned institutions, for-profit or non-profit, can have member lawsuits as well. And the fact that one's called a shareholder and one's called a member, both can be the equity holders of the institution. And, in fact, I've defended the Philadelphia Stock Exchange before it demutualized in equity, in lawsuits brought by members. And their member has their equity capacity. It's a garden-variety shareholder suit, and it is not being brought as a member of the exchange. So why is it subject to Rule 651? Because the issues in – I don't think the Court should actually – that gets to the merits of the issue, which we're – and I will address it. But we're assuming that the rule is valid. But why is it validly applied to a shareholder suit? It's validly applied to any lawsuit that is related to – any lawsuit that touches on subjects related to the business of the exchange, Your Honor. But that issue should be – that is the issue. What happened – Rule 651, there was an invoice issue, Judge Frontes. And on the invoice, it said, if – right on the invoice, it said, if you dispute the invoice – this is an invoice under Rule 651. If you dispute it, please write to the accounting department and advise it of your dispute. If this lawsuit has nothing to do with the governance of the exchange, with the regulatory powers of the exchange, it has nothing to do with the reason for which the rule was enacted. It has to do with shareholders being concerned about the loss of their equity and a reduction in the value of their share. It has everything to do – I would respectfully submit, Judge Frontes, with the reason why 651 was adopted. When the SEC approved various counterpart rules and issued opinions, starting with the rule before the Chicago Stock Exchange, what it found was it fell within Section 6b-4 of the Exchange Act. Section 6b enumerates the specific areas that an SRO, such as PhilEx, has to have rules on. I mean, anything from protecting investors to having rules governing the discipline of members who violate rules, to 6b-4, which states that there must be rules equitably allocating the reasonable fees, dues, and charges of the exchange. Let me ask an underlying question, which maybe you can answer for me. It's common knowledge, a matter of record. Is every member of the Philadelphia Exchange a shareholder? No. Is every shareholder a member? No. So it's possible for a shareholder who's not a member to bring a suit like this, right? Yes. And that wouldn't be governed by 651. That's correct. When you become a member of the stock exchange, you enter into a contract. You agree to abide by the bylaws of the exchange. And under Section 6b-4, there is a finding that there is a charge, there is a requirement, that the exchange implement rules that will equitably allocate fees, dues, and charges. The SEC made a finding that under 6b-4, this rule was appropriate, because rather than burden the exchange with the cost of one member's lawsuit against the exchange, a lawsuit on which the member did not prevail, those costs should be allocated to the member and not through increased dues to other members. Now, what this Court is getting to is the interpretation of that rule. And that goes back to what Judge Tishina was questioning Ms. Westcott about, that there is a comprehensive administrative process here with three tiers of review. There was a dispute. It went to a hearing committee that was comprised of outside board members of the Philadelphia Stock Exchange. There was briefing. There was discovery requested. It was provided. There was a hearing. Ms. Westcott disputes whether she had appropriate notice of the telephone dial-in number. The record is clear, I would submit, that she did. But that's just another factual dispute about this hearing. There is an appeal right. The SEC, she raises no issues, no contentions in her brief about the SEC. The SEC, there was an appeal right to go to the SEC de novo. The SEC has to make two findings in order to affirm the finding of the Philadelphia Stock Exchange. They have to find that there was a violation of the rule, and they have to also separately find that the rule was applied in a manner consistent with the purposes of the Exchange Act. The SEC could take additional evidence if it wanted to. By the way, the SEC had the right to sua sponte, take the appeal. It didn't have to wait for Penmont. The SEC had the right to remand it for further proceedings if it found an irregularity in the process. Has the SEC ever considered what seems to be central to this case, that is, you know, whether or not a rule that on its face applies to members can or should be applied to shareholders? And under what circumstances? Your Honor, it has considered it in the following respect. When Rule 651 was filed, one of the partners in Penmont, on Penmont letterhead, submitted an objection letter to the SEC. It's in the appendix, in which they said, abrogate Rule 651 as you are entitled to do, because it violates Delaware law by shifting the fees in shareholder lawsuits. And the Exchange has announced that it intends to use the rule in this fashion. This is what Mr. Feinberg, on behalf of Penmont, said. The SEC did not abrogate the rule, obviously. That's one time it was brought up. It is currently before the SEC, Judge Tshima, because that same partner in Penmont, Mr. Feinberg, has brought a separate lawsuit against a board member in this rule of the Exchange. And this rule can apply to suits brought not only against the Exchange itself, but to officers, board members, and affiliates. Mr. Feinberg, unlike Penmont here, went through the hearing process and appealed to the SEC as to the applicability of Rule 651 to his situation. And that is fully briefed and pending before the SEC. That's not in the record, is it? No, but it is a public record. Is that something we can take judicial notice of? Absolutely. It's a public proceeding before the SEC. Do you have like a docket number or something like that? I don't have the docket number, but I can certainly provide one to the court. It might be helpful. Katzenberg, can you connect the fee-shifting provision 651 with the regulatory function of the Exchange? Absolutely, Your Honor. As I mentioned before, Section 6B. We're skipping over the exhaustion. No, that's all right. Well, I think it is already related, Your Honor. I'll answer a question, and then I will explain why it is related and why it's, in fact, critical. Section 6B enumerates the nine categories of regulatory functions that the Exchange must play and the rules that they have to effectuate the purposes that they have to themselves pass and adopt to effectuate the Exchange Act. One of those is rules governing the equitable allocation of the fees and dues and charges due to members and member affiliates. Another one of those rules requires the Exchange to have a fair process for hearing questions of violations of those rules, like Rule 651, and implementing appropriate discipline, including suspension or expulsion. Both of those are required regulatory functions of the Exchange. The Second Circuit has had a number of cases as well on what these regulatory functions are, and they've absolutely found that not only the adjudicatory function that we're talking about here, there was a hearing process going on, an adjudicatory process, in which these issues were being dealt with until they were abandoned by Penmont. I understand all of those functions, and they seem appropriate, but how do you go from there to a rule that requires losers in litigation to pay attorney fees? The way you go there is that the SEC, in approving the rule, found that specifically tied it and approved it under Section 6B4, stating that it was an appropriate rule to help equitably allocate fees, dues, and charges. This is a charge that was issued to Penmont Securities under Rule 651, under Section 6B4 of the Exchange Act. And the reason why it ties to the exhaustion issue is that we're having a lot of discussion about what has the SEC said, what might they say in Mr. Feinberg's appeal. But the answer is that is why there's an exhaustion. One of the primary purposes of exhaustion that this Court, the Third Circuit, said in First Jersey, is A, you don't interfere with the administrative process because it renders it useless. B, so you allow the experts to offer their authoritative opinions. Philadelphia Stock Exchange has spoken, but here you have the benefit of three tiers of review. We have not heard from the Commission. And the only reason we haven't heard from the Commission is that on December 19th, the Exchange issued its final order, and Penmont had 30 days to appeal. And what did they do in that 30-day period? On December 31st, they filed this lawsuit instead. They didn't take up, as the Court suggested they might have, a dual track, if they felt like they needed to go into court. And by the way, another safeguard that the SEC provides is, under the SEC's rules, you can ask for a stay. They say they had to come to court on December 31st for a stay? They could have gotten that from the SEC. In fact — You said it's a three-step process. You've got the exchange review process. What's the second step? The SEC de novo process, where they can take evidence. They have to make these findings, not only that there was a violation, but that, as Judge Fuentes is concerned about, that the rule was applied consistent with the Exchange Act. The SEC has to find that. The third step is, there is then a right to appeal to either the D.C. Circuit or, in this case, the Third Circuit. But at that point, the Circuit Court has the benefit of not only what FILEX did, but what the SEC did. And if the SEC remanded to FILEX for some further proceeding, the benefit of that. And interestingly, even at the appellate stage, and this is under the Exchange Act, under 70-y, even at the appellate stage, not only does the court take briefs, but the appellate court can remand to the SEC to take further evidence, if it would find that helpful. So there are abundant safeguards. Is exhaustion still available for Penmont? Well, it is available in the following two respects, Judge Fuentes. There's a 30-day rule for appealing, but there is an exception for exceptional circumstances. If Penmont wanted to, they could today file, they could argue that it's exceptional circumstances, because they came to court instead. They'd be arguing to the SEC at that point. They would argue that to the SEC. Secondly, at any time, any person can file a petition for rulemaking with the SEC. They can independently go to the SEC and say, we think this was invalid. They could even argue we want it rescinded ad bonitio. They could argue whatever they want in that petition. And the SEC is required by statute to send it to the appropriate division, get a recommendation from the division, make the commission must make a determination. They have to notify the petitioner of the determination, and then that determination is appealable to the Federal Appeals Court. I mean, this is a congressionally mandated, comprehensive system. And it's a unique system of self-regulation of our markets. And Penmont is simply picking and choosing where it wants to go. And it's picking and choosing for no reason. In First Jersey, there were allegations of bias, not just institutional bias, but personal bias, that Mr. Bergen, Vice President, was acting maliciously, due process violations that were purposeful. All of that, First Jersey, with respect, rejected as excuses for evading the exhaustion requirement. My time is up. I thank the panel. Thank you, Mr. Katzenberg. Ms. Westcott. Yes, I've got several points. First, to the question about when someone becomes a member of the exchange, do they have their rights? Do they have to accede to the rules and this and that in order to do that? There is a savings clause under the Exchange Act that says you don't give up your state law remedies. And Section 29 of the Act prohibits an exchange from making a member waive any rights or remedies under the Act. And just becoming a member does not prohibit bringing any sort of state court corporate action because Congress never allowed either the SEC or the exchanges through delegated authority to affect any state law corporate claims because they didn't want to federalize corporate law. As to the exhaustion piece, Mr. Katzenberg espouses the hearing by board members of PhilEx and they're intimately interested in the financial outcome of the hearing. The Supreme Court says you can't do that. It does make a very good point, though. I mean, if you had done that, and I don't know that it's still too late to do it, this court would have a far better record to look at and would have the benefit of the SEC's view as to 651 that we don't have now. And that's really the purpose of exhaustion. Not in this case. There are three other courts, the Second Circuit in D.L. Capital Group, the Ninth Circuit in Sparta, and the Eleventh Circuit in Weissman, who have analyzed the distinction between for-profit and regulatory activities. And those cases occurred in relationship to demutualized exchanges when they had shareholders versus only members. And Weissman, in particular, carved out for-profit activities. They've talked about immunity, the line drawn between for-profit and member-type activities is not that easy to draw. But these three circuits are not saying you've got to exhaust administrative remedies before you file your state law claims. So those cases are in my reply brief. As to the Feinberg submission, Mr. Feinberg submitted his case as a private actor, not as a member of Penmont. Like I said, it was an individual's claim for insider trading. So his proceeding is not going to apply to Penmont. Plus, Mr. Feinberg's claim was a federal securities law claim, which is specifically carved out in some of these other exchange rules. Pacific Coast Exchange is one that I recall. As to the regulation of state corporate law, what PhilEx is trying to do is keep its members from suing it, an admirable goal by any corporation. But in this case, they can't use Rule 651 as a hammer over members who are shareholders of a for-profit company to say, you brought this case and weren't successful. And because you're a member, we want a million dollars for what we spent starting in 1998. You've got to keep in mind that this rule wasn't enacted until 2004. And the bill that he submitted went all the way back to 1998. Isn't it a fair rule under the SEC's regulatory powers if it's designed to preserve exchange resources and not use membership fees to pay litigation expenses? If it was not a state corporate shareholder claim, I'd agree that it's a fair rule to try to preserve the assets of the exchange. But you cannot use that rule to stop shareholder litigation. Thank you. Thank you, Ms. Westcott. And thank you both. We will keep the case under advisement. Yes, sir? Judge Toshima still wants I do have the citation. Go ahead and read it. It's N. Ray Feinberg, SEC Administrative Proceeding, Number 3-13128. Thank you.